UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVELLE SEARCY (#195469),
KENNETH WITHERSPOON (#713949),
WILLIAM JOHNSON (#239323),
SHANNON SEXTON (#197754) and
JAMES HOLLAND,

|  |  |
|---|---|
| Plaintiffs, | CASE NO. 2:10-CV-11242 |
|  | JUDGE DENISE PAGE HOOD |
|  | MAGISTRATE JUDGE PAUL J. KOMIVES |

v.

MACOMB COUNTY JAIL,
MARK A. HACKEL,
ARAMARK CORPORATION,
CORRECTIONAL MEDICAL SERVICES, INC.
and VALERIE WATKINS,

Defendants,
_____/

## REPORT AND RECOMMENDATION REGARDING CMS AND WATKINS'S JULY 18, 2012 MOTION TO DISMISS (Doc. Ent. 156)

Table of Contents

I.    RECOMMENDATION: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   REPORT: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      A.    Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      B.    The Instant Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
      C.    Pending Reports and Recommendations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
      D.    Pending Dispositive Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
      E.    Fed. R. Civ. P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
      F.    Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            1.    Plaintiff Searcy's June 28, 2012 Amended Complaint (Doc. Ent. 149) alleges violations of the First, Eighth and
                  Fourteenth Amendments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            2.    CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156) argues that the June 28, 2012 second
                  amended complaint (Doc. Ent. 149) fails to state a claim against them upon which relief may be granted. . . . 10
            3.    To date, plaintiff has not filed a response to CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent.
                  156). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
            4.    The Court should grant CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156) to the extent
                  plaintiff Searcy sues these defendants in their individual or personal capacities for damages. . . . . . . . . . . . . 15
            5.    The Eleventh Amendment bars plaintiff Searcy's claims for damages against defendants in their official
                  capacities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
            6.    Plaintiff Searcy's claims for injunctive relief were rendered moot by his transfer from MCJ. . . . . . . . . . . . . . 25
            7.    The Court should deny CMS and Watkins's request for costs and fees as premature. . . . . . . . . . . . . . . . . . . . 26

III.  NOTICE TO PARTIES REGARDING OBJECTIONS: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

I.     **RECOMMENDATION:** The Court should grant CMS and Watkins's July 18, 2012

motion to dismiss (Doc. Ent. 156).  These defendants are not responsible for the jail conditions

which are the subject of plaintiff's complaint and the allegations regarding deliberate

indifference to a serious medical need do not survive close scrutiny under the standard required

in recent decisions of the United States Supreme Court.  In addition, Valerie Watkins is not

named in the amended complaint which is now before the Court.

II.    **REPORT:**

A.     **Background**

On March 24, 2010, Lavelle Searcy (#195469) was sentenced to nineteen (19) to one

hundred twenty (120) months for a September 25, 2009 violation of Mich. Comp. Laws §

750.357 ("Larceny from the person.").  Case No. 09-004573-FH (Macomb County).

On March 29, 2010, while incarcerated at the Macomb County Jail (MCJ) in Mt.

Clemens, Michigan, Searcy filed three (3) lawsuits in this Court:  *Searcy, et al. v. Macomb

County Jail, et al.*, Case No. 2:10-cv-11242-DPH-PJK, the instant case; *Searcy v. Macomb

County Jail, et al.*, Case No. 5:10-cv-11243-JCO, a prisoner civil rights case which concerned a

kosher diet and was dismissed on March 31, 2012; and *Searcy v. Kroger Supermarket Chain, et

al.*, Case No. 2:10-cv-11244-VAR-DRG, a 12 U.S.C. § 3410 ("Customer challenges") case,

which stems from the alleged events of September 25, 2009 but was dismissed on April 9, 2010.

On February 29, 2012, plaintiff Searcy was paroled from the Michigan Department of

Corrections (MDOC).  However, the Offender Tracking Information System currently indicates

that Searcy has been returned to prison for an alleged parole violation and is assigned to the

Charles Egeler Reception & Guidance Center (RGC) in Jackson, Michigan.  *See*

www.michigan.gov/corrections, "Offender Search."

**B.      The Instant Case**

**1.**      The original complaint in the instant case was filed on March 29, 2010 by plaintiff

Searcy, as well as plaintiffs Shannon Sexton, Kenneth Witherspoon, William Johnson and James

Holland.  Doc. Ent. 1 at 8.[1]

**2.**      By way of Magistrate Judge Hluchaniuk's October 14, 2010 order (Doc. Ent. 32), the

July 28, 2010 motion to amend complaint (Doc. Ent. 14) became the amended complaint and

CMS and Medical Director/Supervisor Doe were added as defendants in the case.

On March 15, 2011, Magistrate Judge Hluchaniuk entered an order (Doc. Ent. 80)

substituting defendant Valerie Watkins for Medical Director/Supervisor Doe and directing the

U.S. Marshal to effect service upon Watkins.)[2]

**3.**      On December 27, 2010, CMS filed a motion to dismiss (Doc. Ent. 46).  On September

20, 2011, Judge Hood entered an order (Doc. Ent. 103) accepting and adopting my report and

recommendation (Doc. Ent. 94) and denying without prejudice defendant's motion to dismiss

(Doc. Ent. 46) and plaintiff's motion to certify class (Doc. Ent. 47).

---

[1]Per the MDOC's website, Sexton (#197754) was paroled on October 16, 2012 (Lincoln Park Parole Office); Witherspoon (#713949) is incarcerated at the Bellamy Creek Correctional Facility (IBC); Johnson (#239323) was discharged on March 7, 2012.

[2]On February 14, 2011, Magistrate Judge Hluchaniuk entered an order (Doc. Ent. 72) requiring plaintiff to provide the correct name and address for Medical Director/Supervisor Doe. On February 24, 2011, plaintiff Searcy provided the Court with three names (Valerie Watkins, Pam Denise and Dr. Maureen Oneigbo).  Doc. Ent. 74.  Thereafter, on March 15, 2011, Magistrate Judge Hluchaniuk entered an order (Doc. Ent. 80) which, in part, substituted Watkins for Doe.

3

On the same date as Judge Hood's order, Watkins filed a motion to dismiss (Doc. Ent. 102). On May 30, 2012, I entered an opinion and order (Doc. Ent. 146) denying without prejudice defendant Watkins's September 20, 2011 motion to dismiss (Doc. Ent. 102).

In the meantime, on October 20, 2011, plaintiff filed a notice of appeal (Doc. Ent. 119) regarding Judge Hood's September 20, 2011 order (Doc. Ent. 103). *See also* Doc. Ent. 120. However, on April 5, 2012, the U.S. Court of Appeals for the Sixth Circuit dismissed the appeal for lack of jurisdiction (Doc. Ent. 138).

**4.**     On May 30, 2012, I entered an order (Doc. Ent. 145) which granted plaintiff Searcy's December 2, 2011 motion (Doc. Ent. 129) to stay proceedings and provide plaintiffs with instructions on how to proceed to the extent it sought an extension of the time within which to file an amended complaint. My order further directed plaintiff(s) to "file any amended complaint no later than Friday, June 29, 2011[,]" and noted that any such amended complaint would supercede any previous complaint, must comply with Fed. Rules Civ. P. 8(a) and 10(a), and may be subjected to a Fed. R. Civ. P. 12(b)(6) motion to dismiss. Additionally, any such complaint was to be signed by each of the plaintiffs on behalf of whom it was brought. *See* Doc. Ent. 145 at 15.[3]

**5**     On June 28, 2012, plaintiff Searcy filed an amended complaint against MCJ, Hackel, Aramark, CMS and Medical Director/Supervisor Doe (Watkins). Doc. Ent. 149 at 1-9.

MCJ and Hackel filed an answer on July 12, 2012 (Doc. Ent. 155). Aramark filed its answer on August 3, 2012 (Doc. Ent. 159).

**C.     Pending Reports and Recommendations**

---

[3]The copy of this order sent to Holland at the MCJ was returned to sender. Doc. Ent. 148.

On January 17, 2013, I entered a report (Doc. Ent. 193) recommending that the Court deem moot in part and grant in part plaintiff Searcy's June 28, 2012 motion to dismiss (Doc. Ent. 15). Specifically, I recommended that the Court deem moot plaintiff's motion to the extent it seeks dismissal of this action as a class but grant plaintiff's motion to the extent it seeks dismissal of plaintiffs Witherspoon, Johnson, Sexton and Holland. I also recommended that such dismissal be with prejudice.

On January 24, 2013, I entered a report (Doc. Ent. 196) recommending that the Court grant defendants MCJ and Hackel's August 15, 2012 motion to dismiss (Doc. Ent. 163) but conclude that plaintiff Searcy has stated a municipal liability claim against Macomb County upon which relief may be granted and, accordingly, direct the Clerk of the Court to add Macomb County as a defendant in this matter.

**D.    Pending Dispositive Motion**

On July 18, 2012, defendants CMS and Watkins filed a motion to dismiss. Doc. Ent. 156.

On September 7, 2012, I entered an order (Doc. Ent. 167) granting plaintiff Searcy's August 20, 2012 motion (Doc. Ent. 164) for an enlargement of time to file responses. My order specifically provided plaintiff Searcy up to and including Wednesday, October 31, 2012 by which to file separate responses to defendants CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156) and defendants MCJ and Hackel's August 15, 2012 motion to dismiss (Doc. Ent. 163).[4]

---

[4]The copy of my order (Doc. Ent. 167) sent to MCJ was returned to sender. Doc. Ent. 168.

On October 24, 2012, I entered an order (Doc. Ent. 172) granting in part plaintiff Searcy's October 18, 2012 motion for enlargement of time (Doc. Ent. 169).  My order specifically provided plaintiff Searcy up to and including Friday, November 30, 2012 by which to file separate responses to defendants CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156) and defendants MCJ and Hackel's August 15, 2012 motion to dismiss (Doc. Ent. 163).[5]

On November 26, 2012, I entered an order (Doc. Ent. 181) denying plaintiff Searcy's November 9, 2012 motion to hold case in abeyance (Doc. Ent. 177), wherein I extended the deadline for plaintiff's response to December 14, 2012 and provided that no further extensions would be granted.  Doc. Ent. 181 at 5.[6]

**E.     Fed. R. Civ. P. 12**

The instant motion is based upon Fed. R. Civ. P. 12(b)(6).  Doc. Ent. 156 at 11-13.  In pertinent part, Fed. R. Civ. P. 12 provides:

> (b) How to Present Defenses. Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:
>
> (1) lack of subject-matter jurisdiction;
>
> (2) lack of personal jurisdiction;
>
> (3) improper venue;

---

[5]The copy of my order (Doc. Ent. 172) sent to Holland at MCJ was returned to sender and stamped, "No Longer At This Address" (Doc. Ent. 174), sent to Searcy was returned with the stamp, "Released" (Doc. Ent. 175); and sent to Sexton was returned to sender and stamped, "Paroled/Discharged" (Doc. Ent. 178).

[6]The copies of my order (Doc. Ent. 181) mailed to Holland at MCJ (Doc. Ent. 183), to Sexton (Doc. Ent. 185), and to Searcy at Salvation Army Harbor Light (Doc. Ent. 187) were returned to the Court.

(4) insufficient process;

(5) insufficient service of process;

(6) *failure to state a claim upon which relief can be granted*; and

(7) failure to join a party under Rule 19.

A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed. If a pleading sets out a claim for relief that does not require a responsive pleading, an opposing party may assert at trial any defense to that claim. No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion.

Fed. R. Civ. P. 12(b) (emphasis added).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

"[T]he allegations must be more than mere conclusions, or they will not be sufficient to state a civil rights claim."  *Ana Leon T. v. Federal Reserve Bank of Chicago*, 823 F.2d 928, 930

(6th Cir. 1987) (citing *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir.1971)).  *See also*

*Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678-679.

**F.    Discussion**

**1.    Plaintiff Searcy's June 28, 2012 Amended Complaint (Doc. Ent. 149) alleges
       violations of the First, Eighth and Fourteenth Amendments.**

As an initial matter, the Court considers plaintiff Searcy's June 28, 2012 amended

complaint to be nine (9) pages in length.[7]  Although the complaint expressly alleges violations of

plaintiff's Eighth Amendment and Fourteenth Amendment rights, *see* Doc. Ent. 149 at 1 & 8,

some of plaintiff Searcy's allegations appear to be based upon an alleged violation of his First

Amendment rights, *see*, *i.e.*, Doc. Ent. 149 ¶¶ 5, 7 & 8.

Generally, after asserting that the December 2009 closure of MCJ's food service facility

was "due to the infectious spread of Black Mold[,]" plaintiff represents that he "was already

living under inadequate ventilation, heating, cooling, medical care, restrictions on religious

freedom, retaliation for filing grievance from a very poorly designed grievance process,

inadequate fire and alarm system and a very, very poor and inadequate Law Library."  Doc. Ent.

149 at 2.

Specifically, plaintiff Searcy complains of, *inter alia*:

(1) black mold in the kitchen at MCJ, which was "not revealed to Plaintiff and
this hazard directly and specifically affected Plaintiff," because he ate from the
kitchen and also that "Aramark and [MCJ] were looking at calories not
Plaintiff[']s health[,]" (¶ 1);

---

[7]The filing is twenty-four (24) pages in length.  However, six (6) of those pages are
duplicates of pages from the March 29, 2010 original complaint (*compare* Doc. Ent. 1 at 3-8, Doc.
Ent. 149 at  10-15) and nine (9) of those pages are duplicates of pages from the July 28, 2010 motion
to amend/amended complaint (*compare* Doc. Ent. 14 at 1-9, Doc. Ent. 149 at 16-24).

(2) CMS's failure to provide health care to prisoners, and he was "not afforded the opportunity to use CMS services[,]" including the allegation that "CMS, as well as all Defendants, failed to even make an attempt to educate Plaintiff, in any manner, via notice, memorandum, open talk or any other method on the dangers of these multiple health hazards, their side effects or what Plaintiff should do in the case of precaution[,]" (¶ 2);

(3) the presence of E. Coli[8] at MCJ, including the allegation that defendants did not mention it and, when considered in conjunction with the presence of Black Mold, "Defendants were not concerned about the health and well being of Plaintiff[,]" (¶ 3);

(4) inadequate ventilation, heating and cooling at MCJ, including the allegation that "[t]he ventilation was so poor that Plaintiff remained ill and could receive no assistance from [CMS]. Visually, it could be clearly seen that Plaintiff was ill, however, Defendants did nothing[,]" (¶ 4);

(5) not being permitted to practice his religious beliefs (Judaism) at MCJ, including allegations that there were problems receiving Jewish services, there were "no books, services, advice, counseling or any other practice for Jewish prisoners[,]" and "anything about Jews w[as] a laughing stock to the jail and requesting Chaplain services was a headache to Defendants[,]" (¶ 5);

(6) dangerous conditions at MCJ, such as inadequate fire detection and alarm systems, the presence of rust and corrosion and poor water quality (¶ 6);

(7) an inadequate grievance procedure at MCJ, the use or mention of which resulted in retaliation (¶ 7), and

(8) denial of access to the Court while at MCJ, based on limited access to and poor qualify of its Law Library (¶ 8).

Doc. Ent. 149 at 2-8 ¶¶ 1-8.

Plaintiff claims to have had "very serious mental concerns, stress, worry, depression, and

hostility" about the food he was eating, Doc. Ent. 149 at 3; alleges that defendants "persistently

---

[8] E. coli is also called escherichia coli. *See* http://www.nlm.nih.gov/medlineplus/ecoliinfections.html. Escherichia coli is "[a] bacterium which normally inhabits the intestine of man. Occasionally, however, this organism causes an infection in the urinary system, especially in infants and females." Schmidt's Attorneys' Dictionary of Medicine, Volume 2, E-165 (1995).

provided Plaintiff with this unhealthy diet claiming it to be healthy, however, this cold repetitive diet cause Plaintiff physical sickness and increased mental problems[,]" and he saw "rapid weight gain, higher blood pressure, constipation, headaches, and heart problems[;]" Doc. Ent. 149 at 4-5; and to have "remained stressed, depressed, worried, hostile, fatigue, physically drained, in fear, constantly hungry and experienced a host of other physical/mental situations that [he] is not qualified to diagnose." Doc. Ent. 149 at 7-8. Plaintiff seeks compensatory and various forms of injunctive relief, including an investigation by an outside agency not affiliated with MCJ or Macomb County. Doc. Ent. 149 at 8-9.

**2.     CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156) argues that the June 28, 2012 second amended complaint (Doc. Ent. 149) fails to state a claim against them upon which relief may be granted.**

In their motion, defendants CMS and Watkins make the following specific arguments:

I.      PLAINTIFF'S CLAIMS AGAINST CORRECTIONAL MEDICAL SERVICES, INC. SHOULD BE DISMISSED PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) BECAUSE PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM UPON WHICH RELIEF MAY BE GRANTED AGAINST CORRECTIONAL MEDICAL SERVICES, INC. PURSUANT TO 42 U.S.C. § 1983.

II.     DEFENDANT, VALERIE WATKINS, RN, SHOULD BE DISMISSED AS A DEFENDANT FROM THIS ACTION AND REMOVED FROM THE DOCKET BECAUSE PLAINTIFF'S SECOND AMENDED COMPLAINT DISMISSED HER AS A DEFENDANT BY OMITTING HER FROM THE PLEADING.

III.    DEFENDANT, VALERIE WATKINS, RN, SHOULD BE DISMISSED AS A DEFENDANT FROM THIS ACTION PURSUANT TO FED. R. CIV. P. 12(b)(6), TO THE EXTENT THAT THIS HONORABLE COURT BELIEVES THAT DOCKET ENTRY 80 IS STILL IN FULL FORCE AND EFFECT, BECAUSE PLAINTIFF'S SECOND AMENDED COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM UPON WHICH RELIEF MAY BE GRANTED AGAINST

10

CORRECTIONAL MEDICAL SERVICES, INC. PURSUANT TO 42
U.S.C. § 1983.

Doc. Ent. 156 at 13-19.

**3.     To date, plaintiff has not filed a response to CMS and Watkins's July 18, 2012
motion to dismiss (Doc. Ent. 156).**

**a.     The docket in this case shows thirty-eight (38) mailings by this Court which have
been returned as undeliverable.**  For example, in eight (8) instances, mail sent to Searcy has

been returned to the Court.  *See* Doc. Entries 99, 105, 106, 113 and 116, *as well as* Doc. Entries

28, 175 and 187.  In five (5) instances, mail sent to Witherspoon has been returned to the Court.

*See* Doc. Entries 86, 96, 107, 134 and 142.  In apparently two (2) instances, mail sent to Johnson

has been returned to the Court.  *See* Doc. Ent. 153; *see also* Doc. Ent. 19.  In six (6) instances,

mail sent to Sexton has been returned to the Court.  *See* Doc. Entries 18, 135, 140, 157, 178 and

185.  Finally, in apparently seventeen (17) instances, mail sent to Holland has been returned to

the Court.  *See* Doc. Entries 67, 68, 75, 82, 85, 95, 114, 133, 141, 147, 148, 174 and 183;[9] *see*

*also* Doc. Entries 20, 112, 158 and 168.

As recently as May 21, 2012, I entered an order (Doc. Ent. 143) directing the Clerk of the

Court to update plaintiffs' contact information and reminding plaintiffs of their obligation to

notify the court of change of address.  Copies of this order were served on May 22, 2012 to each

of the five (5) plaintiffs.  The docket does not indicate that any such copies were returned as

undeliverable.

---

[9]Holland's copies of the Court's January 21, 2011 and January 24, 2011 orders (Doc. Entries
60 and 61) mailed to MCJ were returned to the Court marked, "NOT HERE."  Doc. Ent. 67.
Furthermore, Holland's copies of the Court's January 19, 2011 orders (Doc. Entries 56, 57, 58 and
59) mailed to MCJ were returned to the Court marked, "RELEASED."  Doc. Ent. 68.

**b.**      **Had no scheduling orders been entered and no motions to extend been filed, the due date for plaintiff Searcy's response to CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156) would have been on or about Monday, August 13, 2012.  E.D. Mich. LR 7.1(e)(1)(B), Fed. R. Civ. P. 6(d).**  Plaintiff is presumed to know the rules of this Court.[10]  One of this Court's Local Rules provides that "[a] respondent opposing a motion must file a response, including a brief and supporting documents then available[,]" E.D. Mich. LR 7.1(c)(1), and the same rule provides that "[a] response to a dispositive motion must be filed within 21 days after service of the motion[,]" E.D. Mich. LR 7.1(e)(1)(B).  Therefore, even if plaintiff Searcy did not receive copies of my order (Doc. Ent. 167)[11] granting plaintiff Searcy's motion for an enlargement of time to file responses OR my order (Doc. Ent. 172)[12] granting in part plaintiff Searcy's motion for enlargement of time OR my order (Doc. Ent. 181)[13] denying plaintiff Searcy's motion to hold case in abeyance, plaintiff Searcy was presumed to know the due date for a response to defendants' various motions to dismiss.

---

[10]"[P]ro se litigants are presumed to have full knowledge of applicable court rules and procedures.  Therefore, although the plaintiff is proceeding pro se, he must follow the Federal Rules and procedural rules of the Central District of Illinois." *Moralis v. Flageole*, No. 06-2034, 2007 WL 2893652, 3 (C.D. Ill. Sept. 28, 2007).  Also, "[l]itigants are presumed to know the tax laws and the Rules, even when proceeding pro se." *Bussell v. C.I.R.*, No. 15462-02, 2005 WL 775755, 12 (U.S.Tax Ct. April 7, 2005).

[11]The copy of my order (Doc. Ent. 167) sent to MCJ was returned to sender.  Doc. Ent. 168.

[12]The copy of my order (Doc. Ent. 172) sent to Holland at MCJ was returned to sender and stamped, "No Longer At This Address" (Doc. Ent. 174), sent to Searcy was returned with the stamp, "Released" (Doc. Ent. 175); and sent to Sexton was returned to sender and stamped, "Paroled/Discharged" (Doc. Ent. 178).

[13]The copies of my order (Doc. Ent. 181) mailed to Holland at MCJ (Doc. Ent. 183), to Sexton (Doc. Ent. 185), and to Searcy at Salvation Army Harbor Light (Doc. Ent. 187) were returned to the Court.

**c.**     **Thus far, this Court has three (3) times addressed the due date for a response to CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156).**  First, my September 7, 2012 order set the deadline for plaintiff's response for October 31, 2012 (Doc. Ent. 167). Second, my October 24, 2012 order set the deadline for plaintiff's response for November 30, 2012 (Doc. Ent. 172).  Third, my November 26, 2012 order set the deadline for plaintiff's response for December 14, 2012 and provided that no further extensions would be granted Doc. Ent. 181 at 5).

**d.**     **It cannot be said that the Court misaddressed plaintiff's copies of these orders.** Even though the copy of my October 24, 2012 order (Doc. Ent. 172) mailed to Searcy at apparently JCS (Doc. Ent. 175) was returned to the Court, at the time of my October 24, 2012 order plaintiff's address of record was JCS (*see* Doc. Ent. 170).  And, even though the copy of my November 26, 2012 order (Doc. Ent. 181) mailed to Searcy at Salvation Army Harbor Light (Doc. Ent. 187) was returned to the Court, at the time my November 26, 2012 order was entered, plaintiff's address of record was Salvation Army Harbor Light, 42590 Stepnitz, Clinton Township, Michigan 48036 (*see* Doc. Entries 176 and 177).

**e.**     **Plaintiff still has not filed a response to CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156).**  Since, the entry of my order (Doc. Ent. 181) setting plaintiff's response deadline for December 14, 2012, plaintiff has filed several matters: a December 3, 2012 motion for appointment of counsel (Doc. Ent. 184); two notices of change of address/contact information (Doc. Entries 186 filed on December 3, 2012 [to Detroit Reentry Center (PRF)] and 188 filed on December 21, 2012 [to RGC]); a January 7, 2013 motion to continue and proceed (Doc. Ent. 189); a January 7, 2013 motion to obtain court documents (Doc. Ent. 190); a January

10, 2013 motion to order the MDOC to provide plaintiff with law library access (Doc. Ent. 192); and a January 22, 2013 reply (Doc. Ent. 195).

In his January 7, 2013 motion to continue and proceed (Doc. Ent. 189), plaintiff Searcy does contend that he did not receive anything from this Court between the time he received the September 7, 2012 order (Doc. Ent. 167) and the copy of a docket sheet on December 28, 2012.[14] That he did not receive copies of the Court's October 24, 2012 order (Doc. Ent. 172) or the Court's November 26, 2012 order (Doc. Ent. 181) is consistent with this claim and is evidenced by the return of plaintiff's copies to this Court (Doc. Entries 175 and 187).

The relief sought by plaintiff Searcy's recent filings - the December 3, 2012 motion for appointment of counsel (Doc. Ent. 184); his December 21, 2012 request for a copy of the docket sheet (Doc. Ent. 188); his January 7, 2013 motion to continue and proceed (Doc. Ent. 189 at 1-4);[15] his January 7, 2013 motion to obtain court documents (Doc. Ent. 190); his January 10, 2013 motion to order the MDOC to provide him with law library access (Doc. Ent. 192);[16] and his January 22, 2013 reply (Doc. Ent. 195) - will be addressed under separate cover.

---

[14]The Court assumes plaintiff Searcy received a copy of the docket sheet in this case based upon the request posed in his December 21, 2012 notice of change of address/contact information. *See* Doc. Ent. 188.

[15]Attached to this motion is a copy of a Segregation Law Library Request Form (CSJ-601). Doc. Ent. 189 at 9. *See also* MDOC PD 05.03.115 ("Law Libraries"), effective Nov. 1, 2010, ¶¶ R-V ("Prisoners in Segregation").

[16]Attached to this motion is a copy of a December 26, 2012 MDOC Memorandum from an RGC Administrative Assistant to plaintiff Searcy, wherein Searcy is informed that "prisoners in RGC have access to the Law Library by requesting a *Segregation Law Library Request* form from the officer's desk or the Law Library. Once you have completed the form, pl[ace] it in the mailbox. Law Library staff will deliver and pick up loaned material three times a week on Monday, Wednesday, and Friday." Doc. Ent. 192 at 3.

14

**4.     The Court should grant CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156) to the extent plaintiff Searcy sues these defendants in their individual or personal capacities for damages.**

**a.     As an initial matter, the foregoing sections set forth the ample opportunity plaintiff was given to file a response to CMS and Watkins's July 18, 2012 dispositive motion (Doc. Ent. 156).**  At some point, defendants CMS and Watkins are entitled to a decision on their July 18, 2012 dispositive motion (Doc. Ent. 156).  That they are anticipating a decision on their July 18, 2012 dispositive motion (Doc. Ent. 156) is consistent with their January 23, 2013 response (Doc. Ent. 194) to plaintiff Searcy's motion to continue and proceed (Doc. Ent. 189).  Therein, CMS and Watkins request that the Court deny plaintiff Searcy's January 7, 2013 motion to continue and proceed (Doc. Ent. 189) and "make a determination with respect to their motion to dismiss."  Doc. Ent. 194 at 2, 7.

**b.     Next, this report assumes that any 42 U.S.C. § 1983 claim against CMS or Medical Director/Supervisor Doe or Watkins is based upon an alleged Eighth Amendment claim of deliberate indifference to a serious medical need, and the June 28, 2012 second amended complaint does not allege that plaintiff Searcy had a serious medical need.**  As the Supreme Court of the United States has instructed:

> . . . deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, [428 U.S. 153,] 173 [(1976)], proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [§] 1983.

*Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976) (footnotes omitted).  The Supreme Court further explained:

> . . . in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105-106.

An Eighth Amendment claim of deliberate indifference to a serious medical need has two components - one objective and one subjective. "[T]he objective component of an Eighth Amendment prison claim [is][,] [']Was the deprivation sufficiently serious?[']" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[T]he subjective component [is][,] [']Did the officials act with a sufficiently culpable state of mind?[']" *Wilson*, 501 U.S. at 298.

To be sure, it is clear that plaintiff Searcy is complaining about the conditions of confinement at MCJ, including conditions which potentially effected his health, such as the presence of black mold and E. coli; issues with medical care; inadequate ventilation, heating and cooling; and inadequate fire and alarm system. Doc. Ent. 149 ¶¶ 1, 2, 3, 4 & 6.

For example, plaintiff Searcy's June 28, 2012 amended complaint alleges that CMS "should have been providing health care to prisoners, especially after knowing of the sickness and jail conditions, however failed to do so." Here, Searcy claims, he "was not afforded the opportunity to use CMS services and would have refused to use CMS services anyway despite being in danger of his health." According to plaintiff, "CMS deliberately provides poor and inadequate health care, and their history, both past and present, support[s] these allegations. Plaintiff was being asked to pay $15.00 to see a Dr. (Bedia), $5.00 to see a nurse; and $5.00 for a

16

prescription all for a standard and rehearsed conversation.  CMS's medical care was costly

conversations and vital signs."  Doc. Ent. 149 at 5 ¶ 2.  More importantly, plaintiff contends:

> . . . CMS, as well as all Defendants, failed to even make an attempt to educate
> Plaintiff, in any manner, via notice, memorandum, open talk or any other method
> on the dangers of these multiple health hazards, their side effects or what Plaintiff
> should do in the case of precaution.  Plaintiff was not even provided a simple
> pamphlet.  This experience was cruel and unusual punishment.

Doc. Ent. 149 at 6 ¶ 2.

Also, in complaining about MCJ's "inadequate ventilation, heating and cooling[,]"

Searcy alleges:

> Floor 10-11 remained brutally cold.  Even the jails own county officers often
> complained.  Plaintiff was given one blanket and one sheet to reside in a room
> that actually had **ice** in the window **on the inside**.  The ventilation was so poor
> that Plaintiff remained ill and could receive no assistance from [CMS].  Visually,
> it could be clearly seen that Plaintiff was ill, however, Defendants did nothing.

Doc. Ent. 149 at 6 ¶ 4.

Additionally, plaintiff alleges that MCJ's water "has a very sour taste and damages the

skin terribly, Plaintiffs skin was actually torn up."  Doc. Ent. 7 ¶ 6.

Finally, in his prayer for relief, plaintiff requests that "CMS provide adequate health care

to prisoners, meaningful information and take responsive action in hazardous and dangerous

situations.  Additionally, reduce the cost and provide adequate health care forms where prisoners

can keep a copy of the[ir] verification of request for services[.]"  Doc. Ent. 149 at 8 ¶ 5.

However, plaintiff's claims that CMS knew "of the sickness and jail conditions," Doc.

Ent. 149 at 5 ¶ 2; that "[t]he ventilation was so poor that Plaintiff remained ill and could receive

no assistance from [CMS[,]" and that "it could be clearly seen that Plaintiff was ill, however,

Defendants did nothing[,]" Doc. Ent. 149 at 6 ¶ 4, and that MCJ's water "tore up" plaintiff's

17

skin, Doc. Ent. 149 ¶ 6, do not satisfy the objective component of an Eighth Amendment claim for deliberate indifference to a serious medical need.  In other words, plaintiff Searcy's mention that he was "ill" or that there was "sickness" or that his skin was "torn up" by MCJ's water does not allege a "serious medical need" which implicates the Eighth Amendment.

As for plaintiff's claim that, even though it had been discovered, he was not informed of the presence of black mold at MCJ in the kitchen from which his food products and utensils came and that the epidemic caused "very serious mental concerns, stress, worry, depression, and hostility[,]" such as wondering "whether the food he was being forced to eat was suitable for human consumption or should be disposed of[,]" and that defendants should have answered certain questions, considering that MCJ's food "was already inadequate and lacked nutrient[s] and with the Black Mold present, the food was even more unhealthy and unsafe[,]" (Doc. Ent. 149 at 3 ¶ 1); his claim that he was "served cold meals, poorly prepared because **Black** **Mold** existed throughout the kitchen and more likely in Plaintiffs food[,]" Doc. Ent. 149 at 3-4 ¶ 1); his claim that he received "cold, repetitive unhealthy meals[,]" which were "subject to the same conditions as the hot food," but were "declared to be prepared in a separate place[,]"  instead of receiving "hot, unhealthy and unsafe meals," Doc. Ent. 149 at 4 ¶ 1; his claim that, although defendants claimed it to be healthy, the "cold repetitive diet caused Plaintiff physical sickness and increased mental problems[;]" his claim that he saw "rapid weight gain, higher blood pressure, constipation, headaches, and heart problems[,]" Doc. Ent. 149 at 4 ¶ 1, and his claim that defendants did not mention the presence of E. Coli and "were not concerned about the health and well being of Plaintiff[,]" Doc. Ent. 149 at 6 ¶ 3, do not allege a "serious medical need."

These allegations refer to jail conditions which were not within the responsibility of defendants CMS and Watkins.

If the Court agrees with my conclusion that plaintiff's second amended complaint does not satisfy the objective component of alleging a "serious medical need," then the Court need not consider whether plaintiff's second amended complaint satisfies the subjective component of alleging "deliberate indifference" on the part of CMS and/or Medical Director/Supervisor Doe or Watkins. *See, i.e., Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) ("Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference.") (citing *Estelle*, 429 U.S. at 105-06); *Hernandez v. Keane*, 341 F.3d 137, 144 (2nd Cir. 2003) ("A showing of medical malpractice is therefore insufficient to support an Eighth Amendment claim unless the malpractice involves culpable recklessness, *i.e.*, an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm.") (quotations and citations omitted).

**c.     Plaintiff's June 28, 2012 second amended complaint (Doc. Ent. 149) does not state a claim against CMS upon which relief may be granted, because plaintiff Searcy has not alleged that CMS's liability was based on a policy that resulted in the deprivation of his Eighth Amendment right against deliberate indifference to a serious medical need.** CMS and Watkins characterize plaintiff's Searcy's claims against them as alleging "in a conclusory fashion that [CMS] violated his Eighth Amendment right to be free from cruel and unusual punishment in some undescribed manner allegedly related to the allegation that there was black mold at the [MCJ] resulting in the Plaintiffs being served cold bagged lunches as opposed to hot

19

meals."  Doc. Ent. 156 at 13-14.  Next, defendants contend that "[p]laintiff must allege how a corporate defendant had personal involvement in the harm alleged."  Doc. Ent. 156 at 14.

It is defendants CMS and Watkins's position that plaintiff Searcy "failed to even set forth a formulaic recitation of the elements of an Eighth Amendment cause of action against a private corporat[ion] like CMS."  According to CMS and Watkins, plaintiff Searcy's second amended complaint "does not allege a policy, practice, or procedure of CMS, and does not allege that he was injured as the result of such a policy, practice, or procedure being executed."  Doc. Ent. 156 at 14.

A private entity employed by the state to provide medical services to its prison inmates may be sued under §1983 as one acting "under color of state law."  *West v. Atkins*, 487 U.S. 42, 54 (1988).  Defendant CMS, however, cannot be held vicariously liable under 42 U.S.C. §1983 for the conduct of its agents on the basis of *respondeat superior*.  "CMS, although clearly a state actor and therefore a proper party to this § 1983 action, cannot be held vicariously liable for the actions of its agents, []on a respondeat superior basis.  Hence, CMS's liability must also be premised on some policy that caused a deprivation of [Plaintiff's] Eighth Amendment rights."  *Starcher v. Correctional Medical Systems, Inc.*, 7 Fed.Appx. 459, 465 (6th Cir. 2001) (internal citation omitted) (on appeal from entry of summary judgment for defendants).  *See also Cooper v. Shelby County Justice Center*, No. 99-6365, 2000 WL 924604, **2 (6th Cir. June 26, 2000) (unpublished) ("Cooper's claims against Shelby County, the City of Memphis, CMS, Gilless, Rodgers, and Harper are frivolous because they are based upon a respondeat superior theory of liability, which cannot provide the basis for liability in § 1983 actions."); *Street v. Corrections Corporation of America*, 102 F.3d 810, 818 (6th Cir. 1996); *Holmes v. Overton*, No.

20

5:03-CV-88, 2006 WL 2795459, *5 (W.D. Mich. Sept. 27, 2006) (Edgar, J. adopting and

accepting report and recommendation of Greeley, M.J.).

To be sure, plaintiff Searcy has alleged that CMS "should have been providing health

care to prisoners, especially after knowing of the sickness and jail conditions, however failed to

do so[,]" that plaintiff Searcy "was not afforded the opportunity to use CMS services[,]" that

CMS "deliberately provides poor and inadequate health care," that CMS provided "standard and

rehearsed conversation[,]" that CMS's "medical care was costly conversations and vital signs[,]"

that CMS "failed to even make an attempt to educate Plaintiff, in any manner . . . on the dangers

of these multiple health hazards, their side effects or what Plaintiff should do in the case of

precaution[,]" Doc. Ent. 149 at 5-6 ¶ 2.  Also, plaintiff alleges that "[t]he ventilation [at MCJ]

was so poor that Plaintiff remained ill and could receive no assistance from [CMS][,]" and that

"it could be clearly seen that Plaintiff was ill, however, Defendants did nothing[,]" Doc. Ent. 149

at 6 ¶ 4

However, the Court should agree with defendants CMS and Watkins that "[t]he

allegations do not indicate any policy by CMS that resulted in harm to Plaintiffs."  Doc. Ent. 156

at 15.  As noted above, "[w]here a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement

to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations

omitted).  Defendants CMS and Watkins are correct that "Plaintiff completely failed to allege

sufficient facts to permit the court to conclude it is more than merely possible that anyone relied

on an alleged unconstitutional policy by CMS[,]" and they are correct that plaintiff Searcy's

second amended complaint "does not allege an unconstitutional policy, who relied on an

unconstitutional practice or policy of CMS, when the reliance occurred, . . . or that the reliance resulted in harm to Plaintiffs."  Doc. Ent. 156 at 15.

**d.      Plaintiff's June 28, 2012 second amended complaint (Doc. Ent. 149) does not expressly name Watkins.**  As noted above, Magistrate Judge Hluchaniuk's October 14, 2010 order (Doc. Ent. 32) resulted in the July 28, 2010 motion to amend complaint (Doc. Ent. 14) becoming the amended complaint and CMS and Medical Director/Supervisor Doe being added as defendants in the case.  Then, Magistrate Judge Hluchaniuk's March 15, 2011 order (Doc. Ent. 80) substituted defendant Valerie Watkins for Medical Director/Supervisor Doe and directed the U.S. Marshal to effect service upon Watkins.

More than one year later, in my May 30, 2012 order (Doc. Ent. 145) which granted in part plaintiff Searcy's December 2, 2011 motion to stay proceedings and provide plaintiffs with instructions on how to proceed (Doc. Ent. 129), I set a deadline for the filing of an amended complaint.  Doc. Ent. 145 at 15.  Within my discussion, I stated:

> Plaintiff is on notice that "an amended complaint supercedes all prior complaints." *Drake v. City of Detroit, Michigan*, 266 Fed.Appx. 444, 448 (6th Cir. 2008). Also, any such complaint shall comply with Fed. R. Civ. P. 8(a) ("Claim for Relief."). Furthermore, the amended complaint must comply with Fed. R. Civ. P. 10, which provides in part that "[t]he title of the complaint must name all the parties; the title of other pleadings, after naming the first party on each side, may refer generally to other parties." Fed. R. Civ. P. 10(a) ("Caption; Names of Parties."). And, any such amended complaint may be subject to a Fed. R. Civ. P. 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Doc. Ent. 145 at 13.

Plaintiff's June 28, 2012 amended complaint (Doc. Ent. 149) does not name Watkins as a defendant.  Instead, reminiscent of the change implemented by this Court's October 14, 2010

22

order (Doc. Ent. 32), the July 28, 2012 second amended complaint lists only "Medical Director/Supervisor Doe," in its caption (Doc. Ent. 149 at 1).[17]

Therefore, CMS and Watkins argue that plaintiff Searcy's subsequently filed June 28, 2012 amended complaint (Doc. Ent. 149), which does not name Watkins as a defendant, "effectively dismissed her from this action[.]"  Additionally, CMS and Watkins point out that "any defects in [plaintiff's] [second] Amended Complaint cannot be repaired by prior complaints."  *Drake v. City of Detroit, Michigan*, 266 Fed. Appx. 444, 448 (6th Cir. 2008) (referencing *Parks v. Fed. Express Corp.*, 1 Fed.Appx. 273, 277 (6th Cir. 2001)).  Doc. Ent. 156 at 16.

However, in light of the conclusion reached in the next section, the Court need not opine on whether plaintiff's June 28, 2012 second amended complaint (Doc. Ent. 149) extinguishes Watkins as a defendant.

**e.** **In any event, plaintiff's June 28, 2012 second amended complaint (Doc. Ent. 149) does not state a claim upon which relief may be granted against Watkins or Medical Director/Supervisor Doe.**  First, as CMS and Watkins correctly point out, plaintiff's second amended complaint does not contain any allegations against Watkins, nor does it contain any allegations against Medical Director/Supervisor Doe.  *See* Doc. Ent. 156 at 17-18; *see also Iqbal*, 556 U.S. at 678, *Twombly*, 550 U.S. at 570.

Second, "Section 1983 liability must be premised on more than mere respondeat superior, the right to control one's employees. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999).  A

---

[17]The second amended complaint does state that "[t]he individuals, named in this complaint and the original complaint, who at all times relevant to this action, are the same here in Plaintiff's Court [ordered] Amended Complaint."  Doc. Ent. 149 at 1.

supervisor is not liable under § 1983 for failing to train unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (quoting *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.1982))." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). As CMS and Watkins correctly point out, "Here, Plaintiff has failed to allege any personal involvement of RN Watkins in the incidents that form the basis of his Second Amended Complaint. To the extent that Plaintiff may be suing RN Watkins merely because of her alleged supervisory role, it is clear that such allegations fail to state a claim upon which relief [may] be granted." *See* Doc. Ent. 156 at 18.

**5.     The Eleventh Amendment bars plaintiff Searcy's claims for damages against defendants in their official capacities.**

Plaintiff's June 28, 2012 amended complaint states that all defendants are sued in their individual and official capacities. Doc. Ent. 149 at 1. As noted above, plaintiff Searcy seeks compensatory and injunctive relief. Doc. Ent. 149 at 8-9.

Even though defendants CMS and Watkins's July 18, 2012 motion to dismiss (Doc. Ent. 156) does not mention the Eleventh Amendment, the Court may dismiss defendants CMS and Watkins to the extent plaintiff Searcy is suing them for damages in their official capacities. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States  by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the amendment expressly prohibits only suits against states by citizens of other states, the Supreme Court has long held that the Eleventh Amendment also

bars suits by citizens of the state being sued.  *See Hans v. Louisiana*, 134 U.S. 1 (1890); *Welch v. Texas Dep't of Highways and Public Transp.*, 483 U.S. 468, 472-73 (1987) (plurality opinion).  Further, as the Supreme Court made clear in *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989), the Eleventh Amendment bars suits against state officials sued in their official capacity. *See id.* at 71; *McKay v. Thompson*, 226 F.3d 752, 757 (6th Cir. 2000).  The Eleventh Amendment does not bar suit when a state consents to suit in federal court, and a state may do so by accepting federal funds pursuant to a federal statute which unequivocally subjects a state to suit for monetary damages.  However, the Supreme Court recently held that RLUIPA does not meet this stringent test, and thus acceptance of federal funds does not subject a state, and by extension its officials acting in their official capacities, to suit for monetary damages.  *See Sossamon v. Texas*, 131 S.Ct. 1651, 1658-61 (2011).

6.   **Plaintiff Searcy's claims for injunctive relief were rendered moot by his transfer from MCJ.**

Plaintiff Searcy's June 28, 2012 amended complaint (Doc. Ent. 149), which includes his claims against CMS and Watkins, is based upon the conditions of confinement at MCJ.  It appears that plaintiff was incarcerated at MCJ from the time of his apparent September 25, 2009 arrest (*see* Case No. 2:10-cv-11244-VAR-DRG, Doc. Ent. 1 at 5); through December 2009 (Doc. Ent. 149 at 2); through the filing of his March 29, 2010 complaint (Doc. Ent. 1 at 9); and until his April 5, 2010 notification to the Court that he had been transferred to the MDOC's RGC (Doc. Ent. 4).

Assuming that plaintiff Searcy's June 28, 2012 amended complaint (Doc. Ent. 149) is based on the conditions of confinement plaintiff allegedly encountered while at MCJ from approximately September 25, 2009 until sometime in April 2010, his claims for injunctive relief

against CMS and Watkins were rendered moot by plaintiff's transfer from MCJ.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("to the extent Kensu seeks declaratory and injunctive relief his claims are now moot as he is no longer confined to the institution that searched his mail.").  In other words, plaintiff Searcy's transfer from MCJ renders his second amended complaint moot to the extent it seeks injunctive relief against defendants CMS or Watkins based upon their actions while plaintiff Searcy was incarcerated at MCJ.

**7.     The Court should deny CMS and Watkins's request for costs and fees as premature.**

I also note defendants CMS and Watkins's request for taxation of "all reasonable costs and attorney fees against Plaintiffs where permissible."  Doc. Ent. 156 at 2, 19.  The Court should deny this request for costs and fees as premature.  Should the Court enter judgment in favor of CMS and Watkins, they may present a bill of costs to the clerk of this Court pursuant to 28 U.S.C. § 1920 ("Taxation of costs") and Fed. R. Civ. P. 54(d)(1).  If CMS and Watkins seek attorney fees pursuant to 42 U.S.C. § 1988 ("Proceedings in vindication of civil rights"), they should follow the procedure set forth in Fed. R. Civ. P. 54(d)(2).

**III.     NOTICE TO PARTIES REGARDING OBJECTIONS:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this

Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231, American Federation of Teachers, AFL-CIO*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated:2/1/13

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and by electronic means or U.S. Mail on February 1, 2013.

s/Eddrey Butts
Case Manager

---