UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAVELLE W. SEARCY,

       Plaintiff,

   v.

MACOMB COUNTY JAIL, et al.,

       Defendants.

                                /

CASE NO. 2:10-CV-11242-DT
JUDGE DENISE PAGE HOOD
MAGISTRATE JUDGE PAUL KOMIVES

## REPORT AND RECOMMENDATION ON DEFENDANT ARAMARK CORPORATION'S MOTION FOR SUMMARY JUDGMENT (docket #209)

I.    RECOMMENDATION: The Court should grant defendant Aramark Corporation's motion for summary judgment.

II.    REPORT:

A.    *Procedural Background*

Plaintiff, along with four other current or former inmates at the Macomb County Jail, commenced this action on March 29, 2010, by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. Plaintiffs filed an amended complaint on July 28, 2010. Generally, plaintiffs allege that the kitchen at the Jail was closed due to the presence of black mold, to which they were exposed. They also allege that they were forced to eat bagged meals for over a year, which caused various health problems, and that they received inadequate medical attention. The amended complaint is captioned as being brought against "Macomb County Jail, Sheriff Mark A. Hackel, and Aramak Corporation, et al.," but does not separately list the defendants. Plaintiff Searcy filed a second amended complaint on June 28, 2012. Through a series of orders, the plaintiffs other than

plaintiff Searcy have been dismissed from this action, as have the claims against all defendants other than Aramark Corporation and Macomb County.

The matter is currently before the Court on defendant Aramark Corporation's motion for summary judgment pursuant to FED. R. CIV. P. 56, filed on April 2, 2013.[1]  Defendant Aramark argues that plaintiff's claims are barred by collateral estoppel and *res judicata*. Alternatively, defendant Aramark argues that it is entitled to summary judgment on the merits of plaintiff's claims. Plaintiff filed a response to defendant Aramark's motion on May 22, 2013, and defendant Aramark filed a reply on June 4, 2013. Plaintiff filed a surreply on June 13, 2013. For the reasons that follow, the Court should grant defendant Aramark's motion for summary judgment.

B.   *Summary Judgment Standard*

Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick*, 355 F.3d at 451-52 (citing *Anderson*, 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

---

[1] Also pending before the Court are defendant Macomb County's motion to dismiss, plaintiff's motion for leave to amend, and plaintiff's motion to order defendant Macomb County to answer plaintiff's complaint. These motions are addressed in a separate Report and Recommendation filed on this date.

"The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick*, 355 F.3d at 451 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also*, FED. R. CIV. P. 56(c)(1) (moving party may meet its burden by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *see also*, FED. R. CIV. P. 56(e). To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained: "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. (citations omitted); *see Celotex Corp.*, 477 U.S. at 322-23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland*, 344 F.3d at 613.

C.   *Preclusion*

   1.   *Legal Standards*

As the Sixth Circuit has explained, the concept of res judicata actually encompasses two distinct concepts. *See Heyliger v. State Univ. & Community College Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. Oct. 3, 1997); *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996). Claim preclusion, or "true" res judicata, "refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Heyliger*, 126 F.3d at 852 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984))); *see also*, *J.Z.G. Resources*, 84 F.3d at 214. Issue preclusion, or collateral estoppel, on the other hand, mandates that "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'" *Heyliger*, 126 F.3d at 853 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982)).[2] The preclusive effect of a prior federal court judgment is governed by federal common law. *See EB-Bran Productions v. Warner*, 242 Fed. Appx. 311, 312 (6th Cir. 2007) (citing *Blonder-Tongue Labs., Inc. v. University of Ill. Foundation*, 402 U.S. 313, 324 n.12 (1971); RESTATMENT (SECOND) OF JUDGMENTS § 87 (1982)).

Under federal common law, "[a] claim is barred by the res judicata effect of prior litigation if all of the following elements are present: (1) a final decision on the merits by a court of competent

---

[2]In *Heyliger*, the Sixth Circuit "'express[ed] [the] hope that future litigants, in the interests of precision and clarity, will formulate arguments which refer solely to issue or claim preclusion and which refrain from using the predecessors of those terms, whose meanings have become so convoluted.'" *Heyliger*, 126 F.3d at 852 (quoting *Barnes*, 848 F.2d at 728 n.5). Accordingly, I refer to the issues by those terms.

jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002) (internal quotation omitted). A claim is barred by collateral estoppel if the following elements are met: "1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; 2) determination of the issue must have been necessary to the outcome of the prior proceeding; 3) the prior proceeding must have resulted in a final judgment on the merits; 4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding."

    2.    *Analysis*

In his amended complaint filed on June 28, 2012, as relates to the remaining defendants, plaintiff alleges that the Macomb County Jail was infected with black mold. As a result, he was provided cold bagged lunches which were nutritionally inadequate and which violated his kosher diet. He also alleges that he was exposed to the black mold. These claims mirror the allegations made in his initial complaint, filed along with four other inmates. Construed liberally, plaintiff's complaint raises claims of deliberate indifference to his health in violation of the Eighth Amendment with respect to his exposure to black mold and the nutritionally inadequate diet, of denial of his right to free exercise of his religion in violation of the First Amendment with respect to the denial of his kosher meals. Defendant Aramark argues that plaintiff's claims relating to the diet are barred by issue preclusion, and that his claims relating to exposure to black mold are barred by claim preclusion.

*a. The Prior Litigation*

Defendant Aramark's arguments are based on plaintiff's suit in *Searcy v. Macomb County Jail, et al.*, No. 5:10-CV-11243 (E.D. Mich.). In that case, plaintiff filed a complaint in this Court on March 29, 2010, the same date on which he commenced the current action. Plaintiff named as a defendant, *inter alia*, Aramark Corporation. Plaintiff alleged in his complaint that he was denied a proper kosher diet while detained in the Macomb County Jail. On March 31, 2012, Judge O'Meara, adopting the Report and Recommendation of Magistrate Judge Grand, granted Aramark's motion for summary judgment, concluding that plaintiff had failed to raise a genuine issue of material fact with respect to whether Aramark had improperly denied plaintiff a kosher diet.

### b. Diet Claims–Issue Preclusion

Defendant Aramark contends that plaintiff's diet related claims alleging denial of a kosher diet and being served repetitive, cold, nutritionally inadequate meals were decided against plaintiff in the prior action, and thus are barred by issue preclusion.[3] Here, there is no question that plaintiff's kosher diet claims were fully and fairly litigated against plaintiff in the prior action, nor is there any doubt that the case involved the same parties. Likewise, there is no question that the kosher diet claim was actually and necessarily decided against plaintiff by Judge O'Meara. Plaintiff's inability to establish a genuine issue of material fact with respect to defendant Aramark's alleged denial of

---

[3]Even though the case before Judge O'Meara was filed on the same date as the instant action, that case constitutes a "prior" action for purposes of claim and issue preclusion. For preclusion purposes, the order in which cases are filed is irrelevant. A judgment rendered in one case has preclusive effect in another case which has not yet reached final judgment, even where the case to first reach judgment was filed simultaneous to or after the case which has not yet reached judgment. *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 838 (7th Cir. 1999) ("When the cases proceed in parallel, the first to reach judgment controls the other, through claim preclusion (res judicata)."); RESTATEMENT (SECOND) OF JUDGMENTS § 14 cmt. a (1982) ("For purposes of res judicata, the effective date of a final judgment is the date of its rendition, without regard to the date of commencement of the action in which it is rendered or the action in which it is to be given effect."). This rule applies to both claim and issue preclusion. *Cf. Osborn v. Knights of Columbus*, 401 F. Supp. 2d 830, 833-34 (N.D. Ohio 2005).

a kosher diet was the basis of Judge O'Meara's grant of summary judgment and entry of judgment in Aramark's favor. Thus, the elements of issue preclusion are clearly satisfied with respect to plaintiff's kosher diet claim. Accordingly, the Court should grant summary judgment to Aramark with respect to plaintiff's kosher diet claim on the basis of issue preclusion.

It is equally clear that plaintiff's claim that his meals were cold and nutritionally inadequate is barred by issue preclusion. In the instant case, plaintiff alleges these facts in support of a claim that defendant Aramark's conduct amounted to cruel and unusual punishment in violation of the Eighth Amendment. Although the focus of plaintiff's prior action was his First Amendment claim based on the denial of a kosher diet, these same allegations were made in the prior action, and Magistrate Judge Grand's Report and Recommendation explicitly addressed and rejected plaintiff's Eighth Amendment claim based on the quality of the meals served to plaintiff. Thus, this claim is likewise barred by issue preclusion, and the Court should therefore grant summary judgment to defendant Aramark on this claim.

*c. Black Mold–Claim Preclusion*

Defendant Aramark also argues that plaintiff's black mold claim is barred by claim preclusion. Again, there is no question that the case before Judge O'Meara reached a final judgment, nor is there any question that the parties to the two actions are the same. Thus, the only question is whether plaintiff's claim regarding black mold should have been raised in the action before Judge O'Meara. For purposes of claim preclusion, there is an identity of claims only if the claims arise out of the same transaction or series of transactions, or if the claims arise out of the same core of operative facts *See Browning*, 283 F.3d at 773-74. Plaintiff in the instant action makes a general claim that he was exposed to black mold. As it relates to defendant Aramark

specifically, however, plaintiff alleges that the food he was served may have been contaminated with black mold. Because plaintiff's claims in the prior action also related to the adequacy of his food, Aramark argues, his claim arise out of the same transaction or core of operative facts. Although it is a close question, the Court should disagree. As the Sixth Circuit has explained, "[i]n order for the third and fourth elements to be satisfied, 'there must be an identity of the causes of action that is, an identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Holder v. City of Cleveland*, 287 Fed. Appx. 468, 470 (6th Cir. 2008) (quoting *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). Here, plaintiff's claims arise out of the same transaction at a general level–both sets of claims arise from the food he was served. However, the bases of the claims, and the evidence necessary to sustain the two sets of claims, is quite different. Plaintiff's prior claims focused on the nutritional value of the meals and their compliance with his kosher diet. The current claims, in contrast, allege that he was served food contaminated with black mold. Other than the fact that Aramark was responsible for food service at the jail, the proofs necessary to sustain these sets of claims are distinct. The difference in these claims is akin to the difference in claims alleging deliberate indifference to different types of medical conditions. *See Ibrahim v. District of Columbia*, 463 F.3d 3, 7-8 (D.C. Cir. 2006) (prisoner's suit alleging deliberate indifference in treatment of Hepatitis C not precluded by prior suit alleging deliberate indifference in treatment of prostate cancer); *Cox v. Jackson*, 579 F. Supp. 2d 831, 845 (E.D. Mich. 2008) (Rosen, J., adopting Report of Komives, M.J.) (suit alleging deliberate indifference in treatment of hernia not barred by prior suit alleging deliberate indifference in treatment of eye condition). Accordingly, the Court should conclude that plaintiff's prior suit does not bar his claim alleging that he was served food contaminated by black mold.

*d. Waiver*

Plaintiff also argues that defendant Aramark has waived any claim that his current suit is precluded by not objecting to the simultaneous prosecution of the two suits. There is some authority to support the proposition argued by plaintiff–that is, that a defendant's failure to object to the simultaneous prosecution of two actions waives the preclusion defense. The *Restatement* provides that preclusion does not bar a second action where the defendant "has acquiesced therein." RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a) (1982). The commentary to this section explains:

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the claims does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

*Id.*, cmt. a. Several courts have adopted this approach. *See, e.g.*, *Clements v. Airport Auth.*, 69 F.3d 321, 328 (9th Cir. 1995); *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.3d 1064, 1072-73 (3d Cir. 1990); *Kendall v. Avon Prods., Inc.*, 711 F. Supp. 1178, 1182 (S.D.N.Y. 1989).

This rule, however, is of no assistance to plaintiff here. The rule set forth in the commentary to § 26 applies to claim preclusion. Under that rule, a defendant waives claim preclusion by failing to timely object to a plaintiff's splitting of his claims in two simultaneous actions. A defendant does not, however, waive his right to raise a defense of issue preclusion based on its failure to object to simultaneous prosecution of two actions. As the commentary to the *Restatement* notes in another provision explicitly addressing issue preclusion, "[a] judgment that does not preclude another action on the same claim–one that is not a bar–may have collateral as well as direct estoppel effects." RESTATEMENT (SECOND) OF JUDGMENTS § 27 cmt. n (1982); *see also*, *id.* § 20 cmt. b ("The rules

of issue preclusion apply to a valid and final personal judgment for the defendant even though the judgment is one which, under this Section, does not bar another action on the same claim."). The cases applying the *Restatement* rule bear out this distinction. Thus, in *Clements*, *supra*, the Ninth Circuit explained that a finding of waiver is appropriate where the plaintiff is prejudiced by the defendant's failure to object to the simultaneous prosecution of two actions. Such prejudice is ordinarily present with respect to claim preclusion, but ordinarily absent with respect to issue preclusion. Distinguishing the two, the Ninth Circuit explained:

> In resolving the question of claim preclusion, we found countervailing private interests that led us to apply strictly fundamental principles of waiver—the failure to hold the defendants to their waiver would subject the plaintiffs to gross prejudice. However, no such countervailing interests arise with respect to issue preclusion in this case. In issue preclusion, the only litigation barred is the re-litigation of an issue that has been *actually* litigated and *necessarily* decided. Where the plaintiffs have had a full and fair opportunity to actually litigate the issue and did in fact litigate it, they can not ordinarily be prejudiced by subsequently being held to the prior determination. Moreover, the public interest would be greatly advanced by the application of issue preclusion here. It would avoid inconsistent results and would assist in the conservation of our judicial resources. Accordingly, despite the defendants' failure to raise the issue preclusion defense in a timely manner, we will nonetheless apply the doctrine in this case.

*Clements*, 69 F.3d at 330. The Sixth Circuit has cited this language with approval. *See Gilbert v. Ferry*, 413 F.3d 578, 580 (6th Cir. 2005) (quoting *Clements*, 69 F.3d at 330) ("Since the Defendants raised the fact that the issue in dispute in federal court had been previously litigated in state court in an effort to prevent its re-litigation, and since '[w]here the plaintiffs have had a full and fair opportunity to actually litigate the issue and did in fact litigate it, they can not ordinarily be prejudiced by subsequently being held to the prior determination[,]' we will apply collateral estoppel in this case despite the Defendants' failure to raise the issue properly."); *see also*, *McGinest v. GTE Serv. Corp.*, 247 Fed. Appx. 72, 75 (9th Cir. 2007); *cf. Kendall*, 711 F. Supp. at 1182-86 (finding

that although defendant had waived claim preclusion, plaintiff's claims were barred by issue preclusion).

Here, as explained above, plaintiff's black mold claim is not barred by claim preclusion, and thus there is no need to consider whether defendant Aramark waived the defense with respect to this claim. As to plaintiff's diet related claims, those claims are barred by issue preclusion. Because plaintiff had a full and fair opportunity to litigate these claims in the prior action, and because the issues were actually and necessarily decided by Judge O'Meara in that action, plaintiff cannot show prejudice in the application of issue preclusion and defendant Aramark may therefore rely on the defense notwithstanding its failure to object to plaintiff's simultaneous prosecution of the two actions.

D.    *Merits of Plaintiff's Black Mold Claim*

Nevertheless, the Court should accept defendant Aramark's alternative argument that it is entitled to summary judgment on the merits of plaintiff's black mold claim.

1.    *Legal Standard*

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. In its purest sense, the Eighth Amendment proscribes cruel and unusual punishment meted out in a penal or disciplinary sense. In its application by the courts, the amendment actually protects a wide assortment of interests. It proscribes disproportionate punishments, *Weems v. United States*, 217 U.S. 349, 366-67 (1910), "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86 (1958) (plurality opinion). *See generally, Parrish v. Johnson*, 800 F.2d 600,

609 (6th Cir. 1986). The Constitution "does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). On the other hand, it does not permit inhumane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993); *see also, Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The amendment imposes affirmative duties on prison officials, "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id*. (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

If the offending conduct is not a criminal penalty, then it must reflect an "'unnecessary and wanton infliction of pain'" to come within the Eighth Amendment's prohibition on cruel and unusual punishment. *Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such claims must satisfy both an objective and a subjective test. *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 297-300 (1991). Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). The plaintiff bears the burden of proving these elements by a preponderance of the evidence. *Brooks*, 39 F.3d at 127-28. The objective prong asks whether the harm inflicted by the conduct is sufficiently serious to warrant Eighth Amendment protection. *McMillian*, 503 U.S. at 8-9; *Rhodes*, 452 U.S. at 349 (1981). To satisfy this prong, the conduct must deprive the plaintiff of "the minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 349. The objective component is contextually driven and is responsive to "'contemporary standards of decency.'"

*McMillian*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 103). The subjective prong asks whether the officials acted with a sufficiently culpable state of mind; that is, was the conduct "wanton." *Wilson*, 501 U.S. at 302; *Moore v. Holbrook*, 2 F.3d 697, 700 (6th Cir. 1993). In determining whether an official acted wantonly, the court applies a "deliberate indifference" standard. *Wilson*, 501 U.S. at 302-03; *see Estelle*, 429 U.S. at 104-06. Under this "deliberate indifference" standard,

> a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

*Farmer*, 511 U.S. at 847. A prison official is not free to ignore obvious dangers to inmates, and may be liable even if he does not know the exact nature of the harm that may befall a particular inmate. *Id*. at 843-44. However, prison officials may escape liability if they show that they in fact did not know of the obvious risk to the inmate's health or safety, or knowing of it, they acted reasonably under the circumstances. *Id*. at 844-45. In short, "'[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice." *Wright v. Taylor*, 79 Fed. Appx. 829, 831 (6th Cir. 2003) (citing *Farmer*, 511 U.S. at 835-36; *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc)).

   2.   *Analysis*

Here, plaintiff cannot establish a genuine issue of material fact with respect to either the subjective or objective prong of the Eighth Amendment test. With respect to the objective prong, plaintiff does not allege that his food was actually contaminated with black mold, or that he actually manifested any physical symptoms as a result of ingesting contaminated food. Rather, plaintiff contends that he was fearful that the food he was eating contained black mold. Such fear, standing alone, is insufficient to state an Eighth Amendment claim. To establish an Eighth Amendment

claim, plaintiff must show that his food was "prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). Plaintiff alleges that the replacement food he received because of the black mold contamination was nutritionally inadequate, but that claim is barred by issue preclusion. As to the black mold itself, plaintiff claims only that the kitchen was closed because there was black mold "throughout the kitchen and more likely in Plaintiffs food." Amended Compl., at 4. He does not allege, however, that his food was actually contaminated, nor does he allege that he suffered any ill health effects as a result of eating the food served to him prior to the closing of the kitchen. In the absence of any such allegations, or evidence to support such allegations, plaintiff's speculative claims that his food may have been contaminated with black mold are insufficient to make out an Eighth Amendment claim. *See Wishon*, 978 F.2d at 449; *George v. Conway*, No. 05-CV-510A, 2009 WL 1449046, at *15 (W.D.N.Y. May 21, 2009); *Odom v. Sielaff*, No. CV-920571, 1995 WL 625786, at *5 (E.D.N.Y. Oct. 12, 1995); *Prophete v. Gilless*, 869 F. Supp. 537, 538-39 (W.D. Ten.. 1994).

Moreover, plaintiff cannot establish the subjective prong of an Eighth Amendment claim by showing that defendant Aramark was deliberately indifferent to his health and safety. Even assuming that he could show his food was actually contaminated with black mold, plaintiff cannot show that defendant Aramark had any reason to know about this prior to the closing of the kitchen. It is undisputed that Aramark did no more than provide food under contract with the County; Aramark was not responsible for the condition of the jail or its facilities. Plaintiff himself alleges that the presence of black mold "went undetected even though numerous health, sanitation and safety inspections were performed," Amended Compl., at 3, and that once the presence of black

14

mold was detected the kitchen was closed. In these circumstances, plaintiff cannot show that defendant Aramark was deliberately indifferent to his health. Accordingly, the Court should conclude that defendant Aramark is entitled to summary judgment on this claim.

E.      *Conclusion*

In view of the foregoing, the Court should conclude that plaintiff's claims relating to the nutritionally adequacy of his diet and to the denial of a kosher diet are barred by issue preclusion. The Court should further conclude that there is no genuine issue of material fact with respect to whether defendant Aramark was deliberately indifferent to plaintiff's health and safety by serving him food contaminated with black mold. Accordingly, the Court should grant defendant Aramark's motion for summary judgment.

III.    <u>NOTICE TO PARTIES REGARDING OBJECTIONS</u>:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the

opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Date: February 12, 2014                          s/Paul J. Komives
                                                 PAUL J. KOMIVES
                                                 UNITED STATES MAGISTRATE JUDGE


CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on February 12, 2014.

                                                 s/ Kay Doaks
                                                 Case Manager